**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-26767-CIV-MARTINEZ**

FIDEL M. LOPEZ AVILA,

Petitioner,

v.

KROME NORTH SERVICE PROCESSING CENTER,

Respondent.
_________________________________/

# ORDER

**THIS CAUSE** comes before the Court on Petitioner Fidel M. Lopez Avila's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Pet. [ECF No. 1]). Petitioner challenges the constitutionality of his continued immigration detention at Krome North Service Processing Center in Miami, Florida. (*See generally* Pet.). In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondent to show cause why the Petition should not be granted. (September 29, 2026 Order [ECF No. 4]). Respondent filed its Response to the Court's Show Cause Order on October 5, 2026. (Resp. [ECF No. 7]). Petitioner did not furnish a reply. The Court has considered the Petition, the Response, the record, and applicable law. For the following reasons, the Petition is **DENIED**.

## I. BACKGROUND

Petitioner is a Cuban native and citizen. (Resp. 1) (citing Resp. Ex. 2 ([ECF No. 7-2]); (Resp., Ex. 2, Decl. of Deportation Officer Ricardo Herrero ("Herrero Decl.") ([ECF No. 7-2]) ¶ 5). He was paroled into the country near Key West, Florida, around 1980. (*Id.*) (citing Herrero Decl. ¶ 5). On February 11, 1984, state law enforcement arrested Petitioner for cocaine possession.

(Resp. 1); (citing Resp. Ex. 2 ([ECF No. 7-2]); (Resp., Ex. 1, Form I-213, Record of Deportable/Inadmissible Alien ("Form I-213") ([ECF No. 7-1]) at 1). Later that month, on November 1, 2026, Petitioner was arrested for cocaine possession and trafficking. (Form I-213 2). On November 25, 1984, law enforcement arrested Petitioner for grand larceny of a firearm. (Resp. 2) (citing Form I-213). Petitioner was next arrested for boat safety regulation violations on January 29, 1985. (*Id.*) (citing Form I-213).

On April 20, 1985, he was arrested for trafficking marijuana and indecent exposure. (*Id.*); (Form I-213 3). On June 6, 1985, he was convicted of marijuana trafficking. (Resp. 2) (citing Form I-213). On October 6, 1988, law enforcement arrested Petitioner for aggravated assault with a weapon. (*Id.*) (citing Form I-213). On April 14, 1989, Petitioner was arrested for aggravated assault and battery on a pregnant female. (*Id.*) (citing Form I-213). On April 3, 1990, Petitioner was arrested for vehicle theft and forgery. (*Id.*) (citing Form I-213). Petitioner was arrested for battery on December 11, 1991. (*Id.*) (citing Form I-213). Law enforcement then arrested Petitioner for marijuana possession on January 15, 1992; the state court convicted him of the offense on April 27, 1992. (*Id.*) (citing Form I-213). On February 13, 1992, Petitioner was arrested for battery on his spouse. (*Id.*) (citing Form I-213). Petitioner was arrested for burglary on an occupied dwelling and criminal mischief on August 5, 1992. (*Id.* 3) (citing Form I-213); the state court convicted Petitioner of these two counts on August 18, 1993. (*Id.*) (citing Form I-213).

On September 6, 1992, Petitioner was arrested for second-degree homicide with a knife, which the state later entered *nolle prosequi* on September 29, 1992. (*Id.*) (citing Form I-213). On March 7, 1993, Petitioner was arrested for marijuana and drug equipment possession. (*Id.*) (citing Form I-213). On November 26, 1993, Petitioner was arrested for aggravated battery, and the state court convicted him of the offense on May 9, 1994. (*Id.*) (citing Form I-213). On February 27,

1994, Petitioner was arrested for possession of stolen property. (*Id.*) (citing Form I-213). On July 3, 1996, Petitioner was arrested for conspiracy to export stolen off-highway mobile equipment; the state court convicted him of the offense and sentenced him to 33 months' imprisonment and three years' supervised release. (*Id.*) (citing Form I-213).

On March 12, 1998, Petitioner was arrested for a probation violation related to aggravated battery with a deadly weapon. (*Id.*) (citing Form I-213). Law enforcement arrested Petitioner for domestic assault or battery on August 2, 2000. (*Id.*) (citing Form I-213). On June 22, 2001, Petitioner was arrested for driving under the influence and tag not assigned to vehicle. (*Id.*) (citing Form I-213). On February 16, 2006, Petitioner was arrested for driving while license suspended. (*Id.*) (citing Form I-213). He was arrested for knowingly driving with a suspended license, disorderly conduct, and resisting an officer without violence on October 10, 2007. (*Id.*) (citing Form I-213).

On April 10, 2008, United States Coast Guard ("USCG") apprehended Petitioner 30 miles south of Key West in an attempted smuggling voyage. (*Id.*) (citing Herrero Decl. ¶ 28). The USCG noted that the vessel "was outfitted with the tools of the trade for alien or narcotic smuggling." (*Id.*) (citing Herrero Decl. ¶ 28) Petitioner was then placed in removal proceedings. (*Id.*) (citing Herrero Decl. ¶ 29). On April 15, 2008, immigration enforcement transferred Petitioner to the Krome North Service Processing Center. (*Id.* 3–4) (citing Resp., Ex. 4, Detention History ([ECF No. 7-4]) at 1). On the same day, Petitioner was released on an Order of Supervision ("OSUP"). (*Id.* 4) (citing Herrero Decl. ¶ 32).

An immigration judge ordered Petitioner to be removed from the United States on April 22, 2008. (*Id.* 3–4) (citing Resp., Ex. 4, Removal Order, dated April 22, 2008 ([ECF No. 7-4]) at 1). On March 26, 2026, immigration enforcement encountered Petitioner at the Lee County Jail in

Fort Myers, Florida, after he was arrested for battery. *Id.* (citing Form I-213). An immigration detainer was lodged on Petitioner. *Id.* (citing Form I-213). United States Immigration and Customs Enforcement ("ICE") transferred Petitioner into its custody on June 3, 2026. *Id.* (citing Detention History). On the same day, Petitioner's April 22, 2008, OSUP was revoked; he was afforded an informal interview to respond to the reasons for revocation and present evidence and information in his defense. *Id.* (citing Herrero Decl. ¶ 35; Resp., Ex. 7, Notice of Revocation of Release dated June 3, 2026 ("Notice of Revocation") ([ECF No. 7-7]) at 1). Petitioner declined to participate in the informal interview. *Id.* (citing Herrero Decl. ¶ 35).

On June 3, 2026, Petitioner was served with a Notice of Removal to Mexico. (*Id.*) (citing Resp., Ex. 5, Notice of Removal to Mexico dated June 3, 2026 ("Notice of Removal to Mexico") ([ECF No. 7-5]) at 1). Petitioner refused to sign the Notice. *Id.* (citing Notice of Removal to Mexico). On September 18, 2026, Petitioner was transferred to the Miami Federal Detention Center, where he currently remains in detention. *Id.* (citing Detention History).

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See* *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### A. Revocation of OSUP

As Respondents correctly assert, Petitioner's OSUP was properly revoked. The relevant regulation states that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). The regulation further provides that, if ICE determines, following the informal interview required under § 241.4(l)(1), that revocation of release remains warranted based on a violation of a condition of release, ICE must notify the individual of a subsequent custody review, which "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3).

The record reflects that ICE served Petitioner with a Notice of Revocation for his OSUP on June 3, 2026, and attempted to have an informal interview with Petitioner that same day. (Notice of Revocation 1–2). Petitioner has also been provided with a Notice of Removal to the Third Country of Mexico. (*See* Notice of Removal to Mexico). Petitioner "offers nothing to rebut those records . . . . [He] received exactly what the Fifth Amendment requires—fair notice and a meaningful opportunity to be heard." *Obando-Vargas v. Assistant Dir., US DHS ICE ERO Miami Field Off.*, 832 F. Supp. 3d 1235, 1244 (M.D. Fla. 2026) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Accordingly, Respondents properly revoked Petitioner's OSUP.

### B. Detention

Petitioner contends that Respondent has unconstitutionally detained him for longer than the 90-day removal period and violates the Supreme Court holding in *Zadvydas*. (Pet. 6). The record again reflects that Petitioner is subject to a final order of removal, (*see* [ECF No. 7-4] at 1–

2), and he remains detained pending his removal, as permitted by 8 U.S.C. § 1231(a)(6). Section 1231 provides that "when an alien is ordered removed," the Attorney General shall detain and "remove the alien from the United States within a period of 90 days (referred to as the "removal period")." § 1231(a)(1)(A) and 1231(a)(2)(A). Our Circuit recognizes that "federal law authorizes aliens . . . to be detained beyond the ordinary 90-day removal period." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing § 1231(a)(6)).

Section 1231(a)(6) authorizes continued detention beyond the 90-day removal period if the government has not effectuated the alien's removal within that period:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision[.]

§ 1231(a)(6). Thus, Petitioner may be properly detained beyond § 1231's 90-day removal period for an additional period "reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. Such detention remains "presumptively reasonable" for six months. *Id.* at 701. "This 6–month presumption . . . does not mean that every alien not removed must be released after six months." *Id.* Instead, Petitioner, "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

The Petition is premature because Petitioner has not been in post-order custody for more than six months at the time he filed his Petition on September 28, 2026. *See Mohamed v. Immigration & Customs Enf't*, 19-25300-CV, 2020 WL 13548609, at *3 (S.D. Fla. Jan. 31, 2020) ("Petitioner has filed the instant petition for habeas corpus before the expiration of the presumptively reasonable removal period. Consequently, his petition challenging his continued detention is premature and should be dismissed.").

## IV. CONCLUSION

Accordingly, it is **ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, ([ECF No. 1]), is **DENIED**.
2. The Clerk is **DIRECTED** to mail a copy of this Order to Petitioner.
3. This case is **CLOSED**.
4. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 27 day of October 2026.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc: all counsel of record
Petitioner, *pro se*